OPINION
Plaintiff-appellant, Douglas Steven Lakner, appeals from a divorce decree entered by the Butler County Court of Common Pleas, Domestic Relations Division.
Appellant and defendant-appellee, Alivia Devon Lakner, were married on April 8, 1989. At the time of their marriage, both parties owned real estate in Ohio, to wit: appellee owned a property on Allen Place in West Carrollton, and appellant owned a property on South Riverview in Miamisburg; a property on Ansel Drive in Kettering; a property on Leland Court in Middletown; and a property on Morgan Street and a property on Sheridan Avenue, both in Lemon Township. From the date of their marriage until spring of 1991, the parties lived in appellee's Allen Place property.
On May 9, 1991, the parties purchased a property on Lopane Avenue in Middletown (the "marital residence") for $92,500. The purchase was financed as follows: (1) appellant traded in his Morgan property and Sheridan property for $18,000 each (or a total of $36,000); (2) appellant used $28,000 of the $32,687.94 sale proceeds from his Leland property; and (3) the parties used $28,000 of $35,000 that appellant's mother loaned to both parties on May 7, 1991.
Following the purchase of the marital residence, appellee sold her Allen Place property for which she received $16,260.76 at the closing. It is undisputed that appellee gave $9,000 of the sale proceeds to appellant's mother as a partial reimbursement of the $35,000 loan. Appellee testified that the entire balance of the sale proceeds was used to construct a detached two and one-half car garage on the marital residence property and to repair and/or replace windows of the marital residence. The record shows that by August 10, 1993, appellant had entirely repaid the $35,000 loan by using the $15,063.63 sale proceeds from his South Riverview property and a settlement check he received during his marriage for a premarital personal injury.
During the marriage, the parties took out a line of credit with Huntington Banks which was secured by the marital residence. The record shows that on February 21, 1996, appellant withdrew $5,000. Appellee, in turn, withdrew $6,000 on March 4, 1996 when she moved out of the marital residence. A statement from Huntington Banks with a closing date of February 26, 1996 shows that prior to the foregoing withdrawals, the credit line had a balance of $19,491.91. Following the parties' separation, appellant withdrew $40,000 on March 20, 1996 of which he eventually returned $25,000.
On March 28, 1996, appellant filed a complaint for divorce in the trial court. The parties were divorced by final judgment of divorce filed July 1, 1997. Thereafter, the trial court filed its findings of fact and conclusions of law, which provide in relevant part:
 The court finds that the parties purchased the marital residence located on Lopane Ave, [sic] Middletown, Ohio, on April 9, 1991. The purchase price for this property was $92,500.00. The court finds that $36,000.00 of the purchase price for the Lopane property came from the sale of 2 properties owned by the plaintiff prior to the marriage (3123 Morgan and 1519 Sherridan [sic]) and that $28,000.00 of the purchase price came from the sale of Leeland [sic] Court, owned by the plaintiff husband prior to the marriage. No other premarital funds of the plaintiff were used to purchase the Lopane property. The court finds that the wife contributed the sum of $16,260.76, constituting premarital asset proceeds from the sale of her property at Allen Place towards the Lopane property. The court finds that $9,000.00 of the proceeds from Allen Place were used to pay the plaintiff's mother for sums borrowed by the parties to purchase the Lopane property and the balance of the $16,260.76 was used to make improvements on the Lopane property, including the construction of a detached garage.
 The court finds that at the time the parties separated there was a Huntington Bank line of credit, secured by the Lopane residence, which had a balance of $19,491.91. The Court finds that the defendant withdrew $6,000.00 from this account near the time of their separation. Subsequent to the separation, the plaintiff withdrew the sum of $40,000.00 on this line of credit which he ultimately restored, in part, returning $25,500.00 to the account after defendant filed several motions for contempt for failure to return the funds and failure to make payments as ordered on this account during the pendency of this action. * * *
 The court finds that the marital residence has been listed for sale in the past for as much as $129,900.00. Plaintiff has indicated that he, in the past, would not even consider an offer of $95,000.00 for this property. The defendant introduced evidence that the property would be worth between $120,000.00 [sic] and $125,000.00 if certain repairs to the property were made. The court finds that the plaintiff has the ability to effect repairs to this property himself, as the testimony indicated that he has operated a home improvement business for several years and therefore is in a superior position to maximize his equity in this residence.
 The court awards the sum of $16,240.00 to the defendant as and for her interest in the Lopane property, further orders the plaintiff to pay this sum to the defendant within 30 days of the filing of this entry, and further orders the defendant to quit-claim her interest in this property to the plaintiff. Plaintiff shall be solely responsible for the debt on the marital residence and hold the Defendant harmless therefrom. * * *
 The court finds that the parties purchased during the marriage, among other things, several vehicles, some of which were sold during the course of the marriage. The court finds that presently the parties are the owners of a 1992 Cougar automobile which is driven by the wife, a 1986 Ford Bronco, driven by the plaintiff, and a 1994 Ford Pickup truck driven by the plaintiff. The court awards the plaintiff the Ford Bronco and Ford Pickup and the Defendant the 1992 Cougar. The parties shall be responsible for any debt on each vehicle awarded to them and hold the other free and harmless from any obligation thereon. The court awards the 1987 Bayliner boat, motor, and trailer, originally purchased for $5,000.00, to the plaintiff husband.
 The court has considered the fact that the Huntington Bank line of credit, which has previously been ordered to be paid by the plaintiff husband was initially used for the purchase of automobiles, the boat, and other items. The court has taken into consideration this fact in addition to the award of equity in the marital residence in making the determination that the plaintiff husband shall be responsible for the entire Huntington Bank debt.
 The court finds that the items listed on plaintiff's exhibit 7 are premarital as indicated in that exhibit and, therefore, the court has no jurisdiction with respect to these items. With respect to the marital property, the court finds that the items listed as 1 through 72 in Defendant's exhibit H marital in nature and, with respect to these items, exclusive of the motor vehicles treated elsewhere herein, the parties shall divide these items of personal property by the alternate pick method, Defendant to have the first pick.
Appellant timely filed this appeal and raises the following four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO SET FORTH CLEARLY THE PROPERTY WHICH WAS FOUND TO BE MARITAL AND WHICH WAS FOUND TO BE NON-MARITAL AS REQUIRED BY SECTION 3105.17(B), ORC.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN AWARDING THE DEFENDANT WIFE $16,240 AS HER INTEREST IN THE LOPANE AVENUE REAL ESTATE, AS THAT FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING THAT THERE WAS A DEBT OF ONLY $19,491.91 TO HUNTINGTON BANK AT THE TIME OF THE PARTIES' SEPARATION, AS THAT FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN VALUING A MARITAL ASSET ON THE BASIS OF FUTURE VALUE RATHER THAN PRESENT VALUE.
We note at the outset that while appellant raises four assignments of error, his appeal of the trial court's decision generally challenges the trial court's property division. It is well-established that the trial court has wide latitude in determining a division of marital assets and liabilities. Kaechele v. Kaechele (1985), 35 Ohio St.3d 93, 95. An appellate court will not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court's property division amounts to an abuse of division. Briganti v. Briganti (1984), 9 Ohio St.3d 200, 222. An abuse of discretion is more than an error of law or judgment and implies that the trial court's division is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In his first assignment of error, appellant argues that the trial court erred in failing to clearly delineate which assets were marital and which assets were separate property as required by R.C. 3105.171(B). We note that appellant does not challenge the trial court's property division or its classification of the parties' assets, only that the trial court failed to clearly determine what was marital property and what was separate property.
In order to effectuate an equitable division of property in a divorce proceeding, R.C. 3105.171(B) requires the trial court to first determine what constitutes marital property and what constitutes separate property. Marital property is defined in pertinent part by R.C. 3105.171(A)(3)(a) to include:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]
In contrast, separate property is defined in pertinent part by R.C. 3105.171(A)(6)(a) to include:
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage[.]
In the case at bar, the evidence clearly shows that except for the items listed in appellant's exhibit 7 which were premarital and thus appellant's separate property, appellant's five premarital properties, and appellee's premarital property, all the assets of the parties were marital property and that the trial court treated those assets as marital. While the trial court's determination as to what constituted marital and separate property could have been better articulated, a reading of the trial court's findings of fact clearly shows that the trial court followed R.C. 3105.171(B) and that appellant was given the few items that constituted his separate property. Thus, we find that the trial court properly determined the parties' marital and separate property. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that awarding $16,240 to appellee as her interest in the marital residence was against the manifest weight of the evidence and an abuse of discretion because "[t]he evidence is clear that the entire purchase price of $92,500 * * * came from two sources — [appellant's] premarital real estate and a loan from Appellant's parents which was paid back with a proceeds from the sale of another premarital property and the premarital personal injury award." It is not clear what appellant would award appellee, if anything at all, for her interest in the marital residence.
Appellant is correct that the purchase of the marital residence was financed by three of appellant's premarital properties and by a loan from his mother. Appellant's foregoing argument, however, suggests that the loan from his parents was a loan made to him only. However, the record unequivocally shows that the $35,000 loan was a loan to both parties for which they both signed a promissory note. Appellant's foregoing argument regarding the reimbursement of the loan is also factually incorrect. While it is correct that the bulk of the loan was paid back with proceeds from appellant's premarital property and premarital personal injury award, the evidence also clearly and unequivocally shows that $9,000 of the loan was paid back with proceeds from the sale of appellee's premarital property. Appellee testified that the entire proceeds from the sale of her premarital property in the amount of $16,260.76 was used to partially reimburse the loan to her mother-in-law, to construct a two and one-half car garage, and to improve the marital residence windows. Appellant did not object to or dispute the foregoing testimony.
After thoroughly reviewing the record, and in light of all of the foregoing, we find that competent, credible evidence supports the $16,240 award to appellee and that the trial court's decision is not so unreasonable, arbitrary or capricious as to connote an abuse of discretion. We therefore find that the trial court properly awarded $16,240 to appellee as her interest in the marital residence. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant argues that the trial court's finding that the parties' debt to Huntington Banks was $19,491.91 at the time of the parties' separation is against the manifest weight of the evidence. We note that appellant does not challenge the trial court's determination that appellant is responsible for the entire Huntington debt.
The parties separated on March 4, 1996 when appellee moved out of the marital residence. A statement from Huntington Banks with a closing date of February 26, 1996 shows that prior to appellant's withdrawal of $5,000 on February 21, 1996, the balance was $19,491.91. A second statement with a closing date of March 26, 1996 shows that prior to appellee's withdrawal of $6,000 on March 4, 1996 and appellant's withdrawal of $40,000 on March 20, 1996, the balance was $24,297.51. The statement shows that following the foregoing two withdrawals, the new balance was $70,285.80.
After thoroughly reviewing the record, while we agree with appellant that the trial court was factually incorrect in finding that the parties' debt to Huntington Banks was $19,491.91 at the time of the parties' separation, we cannot say that the overall distribution of the Huntington debt rises to the level of an abuse of discretion or that it is not supported by some competent, credible evidence. The record clearly shows that about a month before the parties' separation, the balance was $19,491.91. Appellee testified that she used the $6,000 to set up an apartment for herself after she moved out of the marital residence. Appellant's testimony regarding his $5,000 withdrawal was unclear and self-contradictory. In finding that the parties' debt was $19,491.91 at the time of their separation, the trial court apparently considered the parties' respective withdrawals of $5,000 and $6,000 made on or shortly before the separation, to be a "wash." In light of the record before us, we cannot say this determination was an abuse of discretion.
We therefore find that the trial court did not err in finding that for purposes of property division, the parties' debt to Huntington Banks was $19,491.91 when they separated. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant argues that the trial court erred in valuing the marital residence on the basis of future value, that is, if appellant expended his efforts to improve the house, rather than present value.
The trial court did not make a specific finding as to the value of the marital residence. Rather, the trial court stated the following:
 The court finds that the marital residence has been listed for sale in the past for as much as $129,900.00. Plaintiff has indicated that he, in the past, would not even consider an offer of $95,000.00 for this property. The defendant introduced evidence that the property would be worth between $120,000.00 [sic] and $125,000.00 if certain repairs to the property were made. The court finds that the plaintiff has the ability to effect repairs to this property himself, as the testimony indicated that he has operated a home improvement business for several years and therefore is in a superior position to maximize his equity in this residence.
The marital residence was purchased in May 1991 for $92,500. Thereafter, a garage was built which, according to appellee's testimony, increased the value of the marital residence by $10,000. Both parties testified that they had tried before to sell the house but were unsuccessful. Appellant testified that the house was then listed between $119,900 and $139,900, while appellee testified the house had been listed for two years at $129,000. A market analysis of the house dated December 11, 1996 and prepared by a real estate agent provided in relevant part:
The exterior of home is in good condition.
Interior needs major work done such as:
 1. Carpet in many areas has been taken up and exposed the old wood floors with splattered paint etc. and needs refinished or new carpet. This includes the larag [sic] hallway upstairs and downstairs, dining room and den. master bedroom.
 2. Upstairs bathroom has tub out sitting on floor. Floor is bare and needs floor covering. Attached laundry room with toilet needs totally redone.
 3. Front upstairs bedroom has a wall where chimney was taken out and all the debris on floor.
 Home in present condition should sell for $95,000 to $100,000.
 Doug advised me that he is not going to do any of this repair before selling the home. If this work should be completed and the walls painted or repapered and the windows have drapes or curtains, I believe the home would sell for $120,000 to $125,000.
At a hearing on March 4, 1997, appellee testified that she had recently visited the marital residence. Appellee testified that since the separation, a fireplace in the bedroom had been taken out and "left there to be open with nothing," a sidewalk had been removed, and carpet had been removed from several areas of the house, including the parties' bedroom. Appellee also testified that due to the removal of the fireplace, the floor, the walls, and the brand new wallpaper in the bedroom had been damaged. Appellee testified that while the parties had planned to work on the upstairs bathroom, they had not planned to remove the fireplace, the carpet, or the sidewalk.
Appellant testified that at one time during the marriage he operated his own business in the construction business and that he made money doing that. Appellant agreed that there was substantial work that could be still done to make the house saleable. Appellant testified, however, that he stopped improving and working on the house when appellee moved out. Appellant admitted, however, that after appellee moved out, he removed the sidewalk "out of sheer boredom," stuccoed the west side of the house, and took out a nonfunctional fireplace. Appellant testified that the room without the fireplace was now fixed up.
After reviewing the record, we find that there is competent, credible evidence to support the trial court's finding that appellant has the ability to effect repairs to the marital residence and that therefore he is in a superior position to maximize his equity in the marital residence should he choose to do so. In light of the foregoing and in light of the fact that (1) certain repairs are necessitated by appellant's own conduct following the parties separation, and (2) appellant admitted that substantial work remained to make the house more saleable, we find no error in the trial court's finding that the residence could be worth between $120,000 and $125,000 if certain repairs were made. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.